Good morning, Your Honors. Bruce Adelstein for the appellants, Gary Kurtz, and Starr Taxman in this case. This is an insurance dispute, and the District Court granted summary judgment. Much of the Court's ruling hinges upon this key evidentiary issue pertaining to the admissibility of spreadsheets in Mr. Kurtz's declaration, the contents of the declaration. As we did in the briefing, I'd like to address that first and then move on to some of the claims and, of course, answer any questions the Court has along the way. The District Court excluded much of the evidence in Mr. Kurtz's declaration under the ground that it failed to comply with Federal Rule of Evidence 1006, the exception to the best evidence rule for voluminous writings. The problem is that the District Court put the The Federal Rule 1006 is not an independent ground for excluding evidence. It's an exception to the admissibility of evidence in the best evidence rule contained in Federal Rule 1002, and Federal Rule of Evidence 1002 simply is inadmissible here. Let me back up a minute. Yes. I've never seen a case quite like this before. What was it that the ensure – what was it that you were trying to establish with the spreadsheets in the declaration? What were you creating a material fact about? There were a couple of things, but basically it was that there were certain claims that were incurred and not paid for by Allstate. Some of them were submitted to Allstate. Some of them were not submitted, but that failure to submit was excused. When you say claims incurred, what do you mean? I'm sorry. Expenses incurred. That is, the appellants had damage to their house, and Allstate under the policy was obligated to pay for the repairs. So you were trying to show that you underwent expenses that were reimbursable under the policy, that you submitted those expenses to the insurance company, and the insurance company refused to pay them. Many of them were submitted, and the insurance company refused to pay them. And a couple pertaining to the structural damage with regard to the water loss were not submitted after Allstate had explicitly said that they wouldn't pay for anything other than the initial $103,000 estimate. Now, the Court, I guess, in thinking that Rule 1006 applies or in making that determination, would be – would have to be thinking that you were submitting the spreadsheet to prove up the contents of the receipts, and that would bring in the best evidence rule. So are you saying you weren't trying to prove the contents of the receipts, but something else? Correct. The – what was being – the evidence that was being offered was the actual financial transaction. The appellant spent X dollars on this day for that. One evidence – bit of evidence that supports that would be the financial receipts. But Mr. Kurtz himself was a precipient witness to having spent the money. He could testify. This is sort of what I'm saying. Well, I don't see how spending the money makes a claim that's reimbursable under the policy. That's what I'm not understanding. The insurance company paid some and rejected some. That's right. And if the money was spent and was reimbursable, but Allstate didn't pay, then that would at least create a tribal issue fact as to whether or not they had failed to do that. Assuming he'd make a claim for it. He'd have to make a claim besides spend it, right? Correct. Or the – I can explain. Okay. And could he make that claim without having the receipts? In other words, were the receipts a necessary part of the claim he was making to the insurance company? Well, under the policy, he would have to prove that he – that he paid for it. So presumably, receipts or canceled checks or invoices or something like that would have had to have been submitted to Allstate. But for the evidence here, in opposition to the summary judgment motion, simply a declaration saying we paid X dollars on this date for this service and that was covered under the policy, or by identifying specifically what it was, repairs to the kitchen or cleaning up this, that would suffice to show that he incurred those expenses. Well, was the summary judgment motion of Allstate that was granted, did it say we paid everything that was submitted? Yes. I believe Allstate. No. Allstate's. That was Allstate's position. No. They paid everything that was what – that was compensable under the policy. Yes. That's right. Not everything that was submitted. Every claim that was submitted, so therefore, they didn't submit anything else. Maybe I didn't follow that. There were claims that were submitted that were paid, claims that were submitted that weren't paid. Weren't paid. And then you also – isn't there an allegation that some – a certain category of claims was not submitted because it would be futile because Allstate agent had indicated don't bother me with this additional expenses for doing structural  repairs. Yes. That was the structural repairs with regard to the water loss. And there was an estimate for $103,000 that their contractor had made. And their contractor testified in his deposition that he didn't intend to do all the work. And Mr. Kurtz was concerned about this. He spoke with the Allstate representative. The Allstate representative said, well, don't worry about it. If there's more things that come up as we go that are reimbursable, that are properly reimbursable, we'll go ahead and reimburse them. And at that – once the contractor started working, he submitted additional claims. He asked Mr. Kurtz to talk to Allstate to get additional money for those additional – I'm sorry, not additional claims – bills for additional work, for work that would have been covered under the policy. And the Allstate representative simply refused to pay anything other than the $103,000. And he refused to consider anything beyond that. What the district court here found was that – was that there was certainly a tribal issue back as to that. If so, that would have excused the insured's failure to make any further claims on Allstate. That is, their bad faith and – they had taken the position we're not paying any more on this claim, and it would have been futile to submit anything else once they had taken that position and, in fact, backed it up by refusing to pay anything else. The contractor refused to finish. They had to go hire someone else to complete the job because Allstate wouldn't pay everything that was – that was owed under the policy for that. So your position is that Mr. Kurtz's testimony, which was supported by this spreadsheet, that there were reimbursable expenses that Allstate refused or declined to pay is sufficient to create a genuine issue of material fact. Is that what you're saying? Yes. So it wasn't that he needed to prove up the contents of the receipts in order to make that claim. Is that what you're saying? Correct. The specific fact that needed to be proven was what he spent, when he spent it, and how much it was for. And then the legal issue hinging upon that is whether or not that was covered under the policy. So your position is taking the declaration, leaving aside the spreadsheet, taking the declaration, it is sufficient to show as to each item that it was – that the expenses were incurred and that they were reimbursable under the policy and they were submitted to the insurer? Yes. To create a – certainly to create a tribal issue of fact. As to each one. Right. It would be as if Mr. Kurtz – and he actually did this with one of the expenses. I think there were only four or six items. He listed them individually in the body of the spreadsheet. Right. If he had done that – But only one. Yeah. But that's all. In essence, that's what he did by attaching the spreadsheets. Rather than listing them in a number of paragraphs, he simply said, I spent what was in the spreadsheet. And it's – Was that an affidavit or deposition or what was that? It was a declaration under penalty of perjury. It's Exhibit 55 in the excerpts of the record. Could I ask a question on a slightly different topic? Yes. What evidence was presented at summary judgment stage indicating that all State hired or supervised? Is it IRS, CO, or ISCO? ISCO. ISCO, rather than simply suggesting that they be hired. I know that's part of your theory, but the declaration, there's just the four paragraphs, 55, 56, and 57, I guess, the three paragraphs. Was there any other evidence submitted that IRSCO was all State's agent rather than being hired by Mr. Kurtz? No. And there was no – there was no contract either by all State or – between IRSCO and the insurance. Mr. Kurtz simply testified that all State had recommended them and said that they'd take care of it and they would hire – hire IRSCO. All State paid him. All State paid him. The bills went directly to all State and all State paid him. And after the problems with the first contractor, the Kurtzes were very happy to have all State handle everything directly. And that, I guess, that's an inference that we could draw from the evidence that would support that, as well as Mr. Kurtz's testimony that – in his declaration that he never signed a contract with IRSCO and all State hired them and the bills went directly to them. The legal issue that hinges upon that – I mean, the trial court had assumed that – the district court had assumed that it was the opposite. And we've discussed the case law, and I think that's pretty straightforward. But if all State, in fact, hired IRSCO, then IRSCO was their agent, and under the policy, IRSCO's negligence is imputed to all State. And – I have never heard of a construction contractor being the agent of the insurer before. Is there authority for that? Authority for that as a factual matter? No, legal authority that when the insurer recommends a contractor, and the contractor is a construction contractor, that the contractor becomes – and then the insurer is paying the bill, as the insurer should, that the contractor becomes the insurer's agent. Well, we have the Walker case. This is the unpublished California Court of Appeal case, which distinguished Recton and the other cases. And in that case, that was exactly what happened. The insured – the insurer hired the contractor, and the California Court of Appeal held that the insurer was liable under the policy for the problems that the contractor – problems with the contractor, the contractor's failure to do it. The policy language also supports this. Under the policy, the – all State can either pay for repairs or repair, rebuild, or replace, or all are part of the damage to destroy their stolen property. So the explicit language of the policy essentially gives all State and the insurers the option to either have all State do it themselves or have the insured do it and submit claims for reimbursement. What section is out of the policy? I could check and maybe I'll – That's okay. All right. It's in the briefs, and it's – And you have about two minutes left. I will reserve it for rebuttal. Thank you. Thank you. Good morning. Good morning, Your Honors. May the police, the Court, my name is James Let me first, if I could, address some of the points, because we believe, of course, that the district court's decision should be affirmed, that it was carefully done by Judge Morrow. It was very fact-intensive and clear from her order that she spent a lot of time reviewing the order and reviewing the transcript and the history. And the history is important here. And the history shows that all State – first, let's go to view with ERSCO and address something that Mr. Arnstein just mentioned. ERSCO was brought into the picture at the request of the insureds. The insureds had previously, as you recall in the record, had used a Mr. Cottle. That was the contractor they retained to work on the water loss. And then Mr. Cottle walked off the job. That all State had nothing to do with. That was between Mr. Cottle and the insureds. They hired him. So when the fire happened, they came to all State, this is in the record, and said, can you suggest someone that we can use to do the repairs? And they said, sure, here's ERSCO. And they've even given another name. But at least here's ERSCO. And so the insurer then went and retained ERSCO. And the insurer paid? Did he pay? No. Under the policy, we said, obviously, all State said they would pay for the repair costs that ERSCO incurred once the bills were submitted. Did he direct his work? I'm sorry? Did he direct the work, or was it directed by all State? It was not directed by all State. It was directed by the insureds, specifically Ms. Taxman, who, according to the record was, and the facts, was very clearly and very much involved, she's Mr. Kurtz's wife, very much involved in directing the contractors as to what to do, whether they, in some cases, they in fact wanted some upgrades done and some different things. Well, we're here on summary judgment, and his declaration alleges that all State arranged for ERSCO to do the work in guaranteeing that work. I do not recall ever contracting with ERSCO, and ERSCO's billings went directly to all State. So he's alleging that all State made all the arrangements with ERSCO, and so why doesn't that create a genuine issue of material fact? Was there overwhelming evidence that that was not the case, that the insured did hire ERSCO? The adjuster testified in this declaration that, in fact, they came to the adjuster and said, can you give us a suggestion for a contractor, after they had this problem with Mr. Connell, and they did, and Ms. Taxman. We don't have Ms. Taxman's declaration. We have Mr. Kurtz's declaration. That's a problem here. Ms. Taxman was the one who handled most of this, and she's the one who was involved with ERSCO in directing what they do. So why isn't this just a dispute about who hired ERSCO? I'm sorry, why is it? Why doesn't that just constitute a dispute that would not be appropriate to resolve on summary judgment? Well, in fact, it wouldn't have made any difference whether all State hired ERSCO because it's not responsible. They didn't enter into a contract. Under the policy, all all State's obligated to do is adjust a claim, evaluate, and pay whoever the insured wants. Now, opposing counsel says, well, there's a right to repair clause in the policy, and so all State took responsibility and, therefore, is responsible, see, the unpublished decision in Walker. Is that not correct? That is not correct. And the district court found that that was not correct. Basically, the argument is that the insurance company guarantees the contractor's work. And that's not true. That, in fact, is why they filed an action and included in their complaint originally ERSCO. Is it not correct And they want to pursue ERSCO. Excuse me. Is it not correct that the policy allows all State to take responsibility for repairs on its own? Is that incorrect? If all State wanted to, they could go in, but only with the insured's consent to go and take over and direct how everything would be done. That didn't happen here at all. Yeah. If I understand this, the bills were submitted to all State, but the person who, people who told the contractor what to do was the insured. That's correct, Your Honor. Absolutely correct. So the scope of the work that was done by the contractor was dictated by the insured. The amount that the insurer paid was, according to the insurer, governed by what was allowable under the policy. That's correct. Absolutely. And especially And so what was in your summary judgment motion? Well, in our summary judgment motion is that we paid those bills. We paid everything that was submitted by ERSCO. The problem came up, and we had it right through a year of discovery in this case. Everything that was submitted by ERSCO. Correct. But after that, and after ERSCO was off the job, we continued to hear complaints. But nothing was submitted that said, here is specifically what we had to pay extra, and here's the bill for it. We didn't get any of that. In fact, in Mr. Kurtz's own declaration, he says there's an additional $35,000 owed under the structure claim, but there's no receipts for it, there's no bill for it, there's nothing other than it's a general $35,000. And if I could, particularly at page 4 of Mr. Kurtz's declaration, which is in the record, he says the spreadsheet is relatively accurate, but includes some estimates. I'm still in the process of attempting to refine this spreadsheet for better accuracy. The only item not provided to Allstate or in discovery is an estimate for repair of my family room ceiling and a beam that Allstate's contractor did not properly repair, leaving an insecure structure that caused a visible seam in the ceiling. This was not provided because the needs of that work was only ascertained after discovery concluded in this action. Now, the fire was in 2003. This was submitted in 2008. At some point, claims have to end. And this is what the process had. Allstate continually said, if you have additional receipts, if you have additional bills, submit them to us. We didn't get anything. Finally, at the summary judgment stage, all we get is this declaration with this vague what may be and could be. And I think the argument, in a nutshell, is this. That in and of itself creates enough of a tribal issue factor, and we'll sort it out when we get to trial. And I think what Judge Morrow said is, no, that's not what trials are for. You have a discovery process. You've had a year for discovery. There was no request to extend discovery. You have a year for discovery. You've got the year. You did everything. You took depositions. You had experts. You could have brought in people. And now is the time to tell us exactly what it is you're claiming. Now, if I got the impression somehow here that this spreadsheet was a work in progress. I think that's correct as well. Now, so Judge Morrow said it can't possibly be evidence of what you actually submitted to the insurer that the insurer refused to pay. That's correct, too. In effect, if the insurer files their lawsuit and says we didn't pay something, then especially after discovery and everything has been given, you should be ready to go to trial. And we waited, therefore, all State waited to file a preliminary judgment motion to give them all the opportunity to get everything in that they thought they were owed, and we can't get it on the first time at the time of the trial when they say it's confusing. Now, is it your understanding that they are claiming monies that they paid to the contractor? Or that's not correct? That's the problem. Still to this day, that is the problem, Your Honor. We don't know. For example, we know that, for example, they did some updating to their home, okay, things that wasn't caused by either of the losses, but that they wanted to change to their home. Obviously, that wouldn't be ours. But we don't know if there's something that was or wasn't because we never got it. What I just read, for example, the $35,000, which is the dwelling, they're not sure what it is. They're still working on it. They claim that they had all these receipts, but that they were in a box that the contractor lost when it was moved. So that's one of their claims, sure. And presumably, there should be bank records? There should be bank records. They can go back to contractors and get records, cancel checks. There are a number of ways. And in fact, adjusters commonly go to them and say, your house burned. We understand. Maybe some documents burned. We will help you recreate that. You can have pictures taken, for example, before the fire to substantiate that there was a lovely crystal vase worth $3,000 or things like that. Okay? That didn't come. Is Versco still in business? I believe it is, but I couldn't be positive. I mean, if it's gone out of business, it might be a reason not to get records from them if they had the records and threw them out the window. As I understand the argument, though, those types of issues, they could have recreated their paper trail better, would go more to the weight of the evidence, whereas the Court here ruled on the admissibility. And so the argument, as I understand it, is they weren't Mr. Kurtz was not trying to prove up the contents of the receipts, which would make it fall under the best evidence rule, but was alleging these losses or these unreimbursed expenses and using the spreadsheet just as an adjunct to refresh his memory of what happened So why was the district court correct in saying under the best evidence rule, it doesn't fall within this rule 1006 exception? Well, I think it's in addition to the best evidence, it's a foundation problem. They have to have a proper foundation, and Mr. Kurtz has to have a proper foundation. And the Court concluded, I believe, that he clearly did not. For example, Ms. Taxman might have been the one, and I think in fact that was mentioned, but she didn't submit a declaration having all of this. Mr. Kurtz's declaration reading through it is conclusory, it's argumentative, it's summary. It's not something that at the time of trial would be admissible. And I think the Court determined that, therefore, you don't – now is the time that you need to submit, since you didn't do it in discovery anyway, now is the time you need to submit the evidence that you would oppose at the time of trial and present at the time of trial to present that. So you're saying that the district court ruled or could have ruled on the basis that Mr. Kurtz didn't have personal knowledge of these unreimbursed expenses. Is that the argument? I think there's a foundation problem, and we objected on foundation grounds in our opposition to the summary judgment as well. But the other point that is important is, and it is under the discovery rules and the trial rules in the district court, if the party does not provide documents in response to discovery requests, and all discovery requests were made here for all documents supporting any claim for damages that you claim have not been paid under the policy, provide them to us. If they're not provided, they don't show up at the day of trial and say, we just found them, here they are. And that's the problem. As the state of the evidence at the time of the summary judgment is that they didn't have anything that was worthy of being admitted that could show that there were items that were not paid that were covered under the policy. So you're saying at trial Mr. Kurtz could not go in and take the stand and testify as to what he had, what he knew were unreimbursed expenses, that you could successfully challenge that as being without foundation? Is that your argument? No. He might be able to do that, provided that he had a foundation to do it, number one, that he had documents. But he said, I'm here. I was there. I know what I paid. But that's the problem. This is my recollection. Is that not enough? Not because of Mr. Kurtz. Mr. Kurtz wouldn't have been able to testify. We took his deposition. He was not the person who was directing that all that work be done. Okay? It was, in fact, Mrs. Kurtz. Well, who was writing the check? For ERSCO, it was Allstate. Now, they may have had additional work that they had ERSCO do that they paid. We don't know, because they were the ones directing them to do that. For example, updating or upgrading things, putting in marble tile instead of linoleum that had been there before, that type of thing. So the point is that the court, I think, recognized that Mr. Kurtz needs backup. That's what the policy provides for. It needs backup to prove that these things were done. And there was no effort made to do that. All that we have is this spreadsheet with vague references, and it's not substantiated. Well, I don't know when you say that they didn't they aren't claiming that they're out of pocket any money? No. They're claiming that they're out of pocket. I believe they're claiming that they're out of pocket or were at the time. But what we're saying is that they did not submit sufficient documentation and evidence to prove that, to substantiate that. All we have is their statement that we're owed more money. And the only few things that were specific that the district court looked at, for example, additional living expenses of having behavioralists and buying video games and things like that, the court addressed those as not being something that would be reasonable as a matter of law. That's not on appeal, right? The behaviorists and the like. I'm not sure exactly what dollar amounts are on appeal and what the claim is, because we don't have, we still don't have exact amounts as to exactly what, to this day. I don't think we could hear exactly what the dollar amounts specific on each claim. But what I'm trying to get at is even setting aside the question of whether or not anything was submitted, they have to show that they under, that they had losses that were compensable. So presumably they would have checks that they wrote, wouldn't they, if they're out of pocket? Well, they presumably would, but they need to submit them. But they're not here. Right. Okay. Thank you. Thank you very much. Time is expired. Thank you. I'd like to just address a couple of the points of array. So on the foundation issue, Mr. Kurtz explicitly stated that he had personal knowledge of this stuff, that even if he didn't write the check, if he saw the check being written or he reconciled the checkbook or, all he had to do was be a percipient witness, and he testified to that. And with some specificities. It's laid out in the briefs, and I won't repeat it. But especially the reply brief, we respond to this argument in some detail. As far as the ERSCO, well, let me go back to the vagueness of the claim damages. If the Kurtzes had cabinets, say, that they, that were damaged, and they decided to upgrade, and they decided to get $8,000 of cabinets instead of four or five or six or whatever the less expensive ones were, the actual amount that all State owed would be an estimate, and it would have to be resolved at trial. Because all we know is that they spent $8,000, but we don't know what the reasonable amount that they would be compensated for. That factual issue would have to be resolved at trial. The fact that it was an estimate does not mean that the evidence is not admissible. It means they owe something, but we don't know exactly how much. Mr. Kurtz estimated certain things that were estimates. And the case law is clear that estimates are the same. I guess I have never seen a case where there's no documentary evidence for expenses that someone incurred. I've got to say that this was not the best tried case. I agree with that point. The question, it's a little bit of a law school sort of question. The question is, is this sufficient to raise a trial of lesser fact, not did the lawyers do the best job? How much total are you claiming they haven't paid that they're supposed to pay? Do you know that? It's spelled out in the spreadsheets. At the bottom, there's a total of $70,000, I think, on the first claim. It's raised to be paid? Yes. This is their claim. And it's in the briefs. I mean, I was explicit about the amount claimed on each one. The Allstate had all of the claims that were submitted, and Allstate, never in response to Mr. Kurtz's declaration, said, here's what was submitted, here's all the details, and X, Y, and Z are not there. So there was really sort of a poor factual showing on both sides. But you had all discovery. There is. You had the ultimate burden of showing that the payments weren't made and that there was bad faith. Those are your claims. Right. Right. I'm just not understanding how you're going to prove it. Well, there presumably will be more evidence and more detailed evidence at trial. The only thing in summary judgment that we have to do is raise a trial of a lesser factual fact in order to defeat some judgment. Okay. Thank you, Your Honor. Further questions? Thank you. The matter disargued is submitted for decision.
judges: Siler, Schroeder, Ikuta